UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-20940-Civ-TORRES

ZAMORA RADIO, LLC,

      Plaintiff,

vs.

LAST.FM, LTD.; CBS RADIO, INC.; CBS CORP.;
SLACKER, INC.; PANDORA MEDIA, INC.;
RHAPSODY AMERICA LLC; REALNETWORKS,
INC.; DKCM, INC. d/b/a JANGO; SOUNDPEDIA, INC.;
AOL, LLC; ACCURADIO, LLC; and, YAHOO! INC.,

      Defendants.
_____/

**ORDER ON ACCURADIO, LLC'S MOTION
TO SET ASIDE DEFAULT JUDGMENT**

This matter is before the Court on the motion filed by defaulted Defendant AccuRadio, LLC ("AccuRadio") to Set Aside Default Judgment [D.E. 155], to which Plaintiff has opposed [D.E. 163]. The Court has reviewed the parties' arguments, the record, and taken notice of the status of this litigation overall in reaching its decision. For the following reasons, the motion will be Granted.

### *I.   BACKGROUND*

The Court previously entered a default judgment against AccuRadio, a multichannel Internet radio station conducting business through a website, www.AccuRadio.com. AccuRadio alleges that it is not a membership or subscriber service; rather, it is a totally advertising-based Internet radio station available to

anyone with Internet access located in any state. AccuRadio is organized under the laws of Delaware and its principal place of business is in Chicago, Illinois. There is no dispute that its base of operations is not in the State of Florida.

On or about April 20, 2009, Plaintiff Zamora Radio, LLC ("Zamora") timely and properly served AccuRadio's registered agent, Corporation Trust Company ("CT Corp.") with the Summons and Complaint in this action. [D.E. 17]. A timely answer or response was never filed to the Complaint. A default was entered and Zamora moved for entry of a default judgment on November 2, 2009, [D.E. 108], which motion was docketed and served through the Court's CM/ECF system. Regrettably, however, the certificate of service on the motion does not indicate that a copy of the motion was served on AccuRadio directly or through CT Corp.

Ten calendar days later, on November 12, 2009, the Court granted the motion and entered default judgment against AccuRadio. [D.E. 117]. The Order directed Zamora to file an affidavit of damages, which Zamora complied with on November 24, 2009. The notice of filing, however, also did not certify service on AccuRadio. [D.E. 125]. The Court then entered the final default judgment against AccuRadio on December 14, 2009 [D.E. 128], which is the judgment at issue in this motion. The judgment entered an award of $106,000 in compensatory damages (based on a 5% royalty rate) and permanent injunctive relief against AccuRadio.

Two months later, AccuRadio filed the present motion. AccuRadio now alleges that, without AccuRadio's knowledge, CT Corp. forwarded the Summons and Complaint to an entity called Aritaur Communications in Massachusetts rather than to AccuRadio's office in Illinois. Aritaur Communications is an investor in AccuRadio,

but is allegedly not involved in the day-to-day management or operations of AccuRadio. AccuRadio claims that it did not know that CT Corp. had an incorrect address on file for service of process on AccuRadio. CT Corp. received its instructions from the law firm that organized AccuRadio as a limited liability company, not AccuRadio. Further, AccuRadio points to the fact it has never previously been involved in civil litigation, or been served with any papers by CT Corp., as an explanation for why it did not receive actual notice of the Complaint. Based on these proffered facts, AccuRadio alleges that it did not know that it was required to take any action in defense of this lawsuit.

Nevertheless, AccuRadio acknowledges that on June 22, 2009, its CEO, Kurt Hanson, received a telephone call from an agent of Zamora. Zamora's agent informed Hanson of Zamora's belief that AccuRadio had infringed on its patent and the lawsuit was discussed. Hanson allegedly did not realize, however, that his company had been served with a complaint or that any action on his part was required.

Following the entry of final judgment against it, AccuRadio learned of the Final Default Judgment when it was contacted by an agent of Zamora via email on January 19, 2010. AccuRadio then retained counsel to seek to set aside the default judgment through the pending motion. AccuRadio now argues that the default judgment should be set aside because (1) it is not subject to personal jurisdiction in this forum, thus voiding the judgment under Rule 60, (2) its failure to respond to the original complaint was due to excusable neglect and thus may be set aside under Rules 55 and 60, and (3) through a supplemental filing the Court permitted, that there has been a material change in circumstances following the entry of the judgment that warrants setting aside the judgment under Rule 60.

Zamora, understandably, opposes the motion. In short, Zamora maintains that AccuRadio is merely offering insufficient excuses for why it did not properly and timely respond to the Complaint. Zamora disputes the argument that personal jurisdiction is lacking over AccuRadio as it is offering similar services to each of the other current defendants in this matter, one of whom (the Court found in a prior order) did so in a manner that gave rise to specific jurisdiction in this case. Finally, AccuRadio's argument for excusable neglect should be disregarded, argues Zamora, given that AccuRadio had direct contact with representatives from Zamora regarding settling the litigation and, yet, never took the initiative to defend their interests in this case despite having multiple means to discover that the litigation was pending. Notably, however, Zamora did not file any opposition to the supplemental argument raised by AccuRadio that the intervening change in circumstances in the case – the Court's claim construction and Zamora's consent to entry of judgment of non-infringement (subject to appeal) – provide a further basis to vacate the earlier default judgment in the interests of justice.

## II.  ANALYSIS

### A.  *Legal Standard*

A court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b). Fed. R. Civ. P. 55 (c). On motion and just terms, the Court may relieve a party or its legal representative from a final judgment, order, or proceeding for, *inter alia,* excusable neglect, where the judgment is void, or for any other reason that justifies relief. Fed. R. Civ. P. 60(b)(1), (4), (6).

The rule is equitable in origin, and the court may take action appropriate to accomplish justice. *Klapprott v. U.S.,* 335 U.S. 601, 614-15 (1949). Because of the strong policy of determining cases on their merits, defaults are seen with disfavor. *Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc.*, 740 F.2d 1499, 1510-11 (11th Cir. 1984). Consequently, in exercising its discretion, a court must "carefully interpret the provisions of the rule to preserve the delicate balance between the sanctity of final judgments and the demands of justice." *Jackson v. People's Republic of China,* 794 F.2d 1490, 1494 (11th Cir. 1986) (citing *Griffin v. Swim-Tech Corp.,* 722 F.2d 677 (11th Cir.1984)).

An *in personam* judgment entered without personal jurisdiction over a defendant is void as to that defendant. *See, e.g., Oldfield v. Pueblo de Bahia Lora*, 558 F.3d 1210 (11th Cir. 2009). Thus if a court concludes that it lacks personal jurisdiction over a defendant, it should set aside a default judgment entered against that defendant pursuant to Fed. R. Civ. P. 60(b)(4). *See id.* at 1218.

To obtain relief under Rule 60(b)(1) for mistake or excusable neglect, the moving party must demonstrate that an error made did not result from his or her own culpable conduct. *See, e.g., Weiss v. St. Paul Fire & Marine Ins. Co.,* 283 F.3d 790, 794 (6th Cir. 2002). A failure to receive timely service due to an agent's or attorney's error can be a basis to set aside a default judgment for excusable neglect, depending on the totality of the circumstances. *See, e.g., Blois v. Friday,* 612 F.2d 938, 940-41 (5th Cir. 1980) (binding Fifth Circuit decision reversing the denial of a motion to set aside a default judgment based on lack of service and notice, which resulted from an attorney's failure

to file a proper notice of change of address). The relevant factors to consider include prejudice to the opponent, length of delay and impact on the case, reason for the delay, and moving party's good faith. *See, e.g., In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.,* 496 F.3d 863, 866-67 (8th Cir. 2007).

Finally, under Rule 60(b)(5)-(6), relief from judgment may be granted where "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or . . . any other reason that justifies relief." This rule has particular application in cases involving prospective relief – such as the entry of a permanent injunction like the one entered against AccuRadio here. "[I]t is appropriate to grant a Rule 60(b)(5) motion when the party seeking relief from an injunction or consent decree can show 'a significant change either in factual conditions or in law.' A court may recognize subsequent changes in either statutory or decisional law." *Agostini v. Felton,* 521 U.S. 203, 215 (1997) (citing *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 384 (1992); *Railway Employees v. Wright,* 364 U.S. 642, 652-53 (1961); *Pasadena City Bd. of Ed. v. Spangler,* 427 U.S. 424, 437-38 (1976)). "A court errs when it refuses to modify an injunction or consent decree in light of such changes." *Agostini,* 521 U.S. at 215 (citing *Railway Employees v. Wright,* 364 U.S. at 647 ("[T]he court cannot be required to disregard significant changes in law or facts if it is satisfied that what it has been doing has been turned through changed circumstances into an instrument of wrong")) (internal quotation marks omitted).

### B. *The Court May Lack Personal Jurisdiction*

As we all know all to well by now, where specific jurisdiction is asserted, the inquiry is "whether: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Avocent Huntsville Corp. v. Aten Intern. Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008). AccuRadio argues that the Court here lacks specific jurisdiction over it to sustain the default judgment previously entered. And Zamora does not argue that AccuRadio is subject to general jurisdiction in Florida. Therefore, we must determine on this record if specific jurisdiction lies against AccuRadio.

This Court recently denied a similar motion challenging personal jurisdiction in this same case against a different defendant – Last.FM Ltd. (hereinafter "Last.FM"). [D.E. 140]. That order too focused on specific jurisdiction. The relevant inquiry was whether defendant's conduct and connection with the forum state was such "that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Thus, this Court analyzed "whether: (1) the defendant purposefully directed its activities towards residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." [D.E. 140 at 18 (citing *Avocent,* 552 F.3d at 1332)].

In addressing the first prong of purposeful availment, we applied a two-prong test that analyzed the interactivity of the defendant's website, and the foreseeability of being haled into the forum State. [D.E. 140 at 19-21]. This was necessary because

Last.FM, like AccuRadio, did not have any physical contacts with Florida, was not incorporated under Florida law, and did not have its principle place of business in Florida. [D.E. 140 at p. 19]. In order to find jurisdiction based on the existence of a website, this Court used the *Zippo* "sliding-scale" analysis that accepts that a "highly transaction-oriented website" may by itself give rise to personal jurisdiction. [D.E. 140 at 19 (citing *Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005); *Zippo Mfg Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997))].

Under that analysis, at one end of the spectrum are situations where a defendant clearly does business over the internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an internet website that does little more than make information available to those who are interested in it. That latter situation does not create grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive websites where a user can exchange information with the host computer. In those cases, the propriety of the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website. *Zippo Mfg. Co.*, 952 F. Supp. at 1124. The sliding-scale analysis assesses the sufficiency of the minimum contacts by measuring the degree of activity or passivity of the website.

*See Roblor Marketing Group, Inc., v. GSP Indus., Inc.*, 645 F. Supp.2d 1130, 1139 (S.D. Fla. 2009).

Following this analysis, this Court held that Last.FM's website was undoubtedly interactive. The website invited users to download MP3s, view music videos, and search for and listen to music by specific artists. Without prompting, the website provided concert listings in the State of Florida and the Southern District. This highly interactive website was thus clearly targeted towards Florida residents. [D.E. 140 at p. 20].

Under the second prong – the foreseeability analysis – personal jurisdiction over a nonresident defendant exists if the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. *Word-Wide Vokswagen Corp.*, 444 U.S. at 297. For Last.FM, we found that the defendant could have foreseen being haled in Florida. The website was accessible in Florida and the Southern District and allowed Florida residents to knowingly and purposefully download computer files over the internet. Thus, without a showing otherwise, there was ample reason to find that Florida residents had in fact downloaded and used Last.FM's services. Therefore, Florida was a predictable forum for Last.FM. [D.E. 140 at p. 21].

The present dispute is clearly similar to that of Last.FM. Like Last.FM, AccuRadio is an internet radio station that is accessible around the world, including Florida. Admittedly the majority of its revenue is accrued through selling advertising spots on the website. However, there are certain important distinguishing factors that

may require factual development, for which setting aside the default judgment may be appropriate.

First, AccuRadio's website appears less interactive. Users apparently cannot download MP3s or view music videos, although AccuRadio does provide a link to *Amazon.com* in order to do so. The website does not appear to provide concert listings in Florida in any way. Although users can search for and listen to music by specific artists, the users are generally bound by the pre-created AccuRadio channels that merely play those artists in a pre-selected rotation (there is, however, an offer to "customize each channel to your tastes" in a "Build Your Own Channel" tool). These last factors make AccuRadio substantially less interactive than Last.FM, and substantially less targeted to the Southern District of Florida. AccuRadio does admit that some of its ad-serving vendors may display ads based on the user's location, but AccuRadio indicates that these ads do not promote AccuRadio's service and are not controlled by AccuRadio. [D.E. 155 at p.8, FN7].

The record shows, however, that ads for Norwegian Cruise Lines are featured that include travel to Southern Florida and the Bahamas, Disney World, and the Cayman Islands. But it is unclear whether ad vendors featured on the site do in fact target Florida, nor the way in which these ad vendors may do so. Nor is this Court aware of AccuRadio's actual knowledge of this targeting, or the quantity of actual AccuRadio users in Florida. Without such knowledge, it is difficult to make a definite judgment on this record as a matter of law.

Second, there is no evidence indicating whether AccuRadio allowed Florida residents to knowingly and purposefully download computer files over the internet. As stated above, AccuRadio does not offer MP3 downloads. AccuRadio does have links to download Internet Explorer 8, which hyperlinks to the Internet Explorer website. There has been no substantiated showing that AccuRadio does allow such direct download interactivity. In fact, Zamora fails to address the foreseeability issue whatsoever. AccuRadio does, however, provide affidavits from its CEO that AccuRadio does not permit the downloading of data packets. [D.E. 171 at 3, n.4]. Nevertheless, the website is still accessible to the State of Florida. Without more information on AccuRadio's contacts with Florida, such as the number of Floridian users, the number of AccuRadio newsletters sent to Floridians, or the number of comments Floridians sent AccuRadio via its "Feedback section", this Court is hard pressed to address foreseeability on a cold record.

In *Roblor*, a patent owner brought an infringement action against nonresident competitors. The patent was for a golf-course GPS system. The defendant was a company registered and licensed to do business in California. It had no address, offices or employees, or a telephone number in Florida. The defendant's only contact with Florida was by two identical word-wide websites consisting of a single page, advertising defendant's marketing services for engineers. The website page invited potential customers to contact the defendant through email, and described the plaintiff as one of its clients. No sale or commercial exchange could be made through the sites. *Roblor,* 645 F. Supp.2d at 1137. On that record, we applied the *Zippo* sliding-scale

analysis, and held that the defendant's websites were passive. The defendant's sites did not permit communication or sale, and no email could be posted on the websites. That the defendant's email address displayed in the form of a hyperlink only rendered the website slightly less passive and more interactive. Even so, this Court held that if this hyperlink made the website *per se* interactive, exercise of jurisdiction still violated Due Process under the broadened traditional analysis applied in cases like *Instabook Corp. v. Instantpublisher.com*, 469 F. Supp. 2d 1120, 1125 (M.D.Fla. 2006) (treating the sliding-scale of interactivity as one factor among others to define the purposeful availment factor).

In adopting the *Instabook* analysis, we agreed that a commercial and interactive website that does not appear to have been designed or intended to reach customers in the forum state should not be a basis for personal jurisdiction. Thus, the Court employed its two-step analysis as to the website's interactivity and the defendant's actual interactions with the state of Florida. *Roblor,* 645 F. Supp. 2d at 1142. Under this test, the key factor to the Due Process analysis is foreseeability – whether the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. *Id* at 1143. In *Roblor*, despite the passive-interactive nature of the websites, we found that the defendant could not have foreseen a suit in Florida. In particular, the defendant had never targeted Floridians through an advertising campaign, and had never contracted with any party in Florida. *Id*. Thus, exercise of jurisdiction was improper.

Here, the present record appears to be distinguishable from *Roblor* in that AccuRadio's website is far more interactive than the website at issue in *Roblor*. AccuRadio allows for personalized channel-building and posting feedback on the site, the website is rife with hyperlinks and advertisements and it acts as an intermediary for commercial activity (with Amazon.com, Internet Explorer, etc.). However, the question remains whether, despite this commercial and interactive nature, the website is designed or intended to reach customers in the forum state of Florida. Only discovery on advertising ties, listener base, and quantity of feedback from Florida will accurately answer this question. A simple reading of the record and the website does not yield a meaningful answer.

Furthermore, information regarding the burdens on the defendant and plaintiff to litigate in Florida is required. As it stands, AccuRadio appears to be a larger corporation than that in *Roblor*, but documents and witnesses are likely in Chicago. Florida's interest in the suit will be affected by information on AccuRadio's contacts to this state. Thus, more discovery on these details would be required.

As things stand now, of course, default judgment has already been entered. The case against AccuRadio is now closed. But given the uncertainty that the Court has with respect to the personal jurisdiction issue, in contrast with the more clear and definite record facts available for Last.FM, there is a material and significant question here whether the default judgment must be voided. At the very least, this would require reopening the case against AccuRadio solely on this question. But given that there are additional grounds to set aside the default judgment, we will rely on the very

real possibility of a void judgment as one basis why we will exercise our discretion to set aside the judgment, as per Rule 60(b)(4).[1]

### C. *A Material Change in Circumstances Exists*

A separate basis to set aside the default judgment exists based upon a significant change in factual circumstances.[2] In its supplemental filing, AccuRadio also cited the fact that, after the parties all briefing on AccuRadio's Motion to Set Aside, Zamora filed a Motion for Entry of Consent Judgment, in which it acknowledged that, based on the findings of the Court's Claims Construction Order [D.E. 170], the interactive functions involved in AccuRadio's Internet radio service do not infringe any of the claims of the '339 patent. The Claim Construction Order states that the claim

---

[1] We note here that support for this conclusion may be found in the Eleventh Circuit decision in *Jackson v. People's Republic of China,* which affirmed a trial court's decision to set aside a default judgment against a defendant that presented a substantial jurisdictional challenge to the judgment. 794 F.2d at 1495-96. One of the reasons cited by the court, whose Order was affirmed, was the "existence of pregnant questions relative to the jurisdiction of the Court." *Id.* at 1496. The Court of Appeals affirmed that Order because the trial court's "Rule 60(b) power was discretionary and must be liberally construed to achieve substantial justice." *Id.*

[2] Because we deem this and the preceding issue to be dispositive, we need not address whether the excusable neglect prong of Rule 60(b) has also been satisfied. We doubt whether, *by itself,* a party's failure to properly advise its registered agent of the proper service address would be sufficient. That misfeasance is traceable directly to the party, not its attorneys or agents. On the other hand, we note as well that the issue still gives us some pause for a slightly different reason. Though service was proper, the record here shows that the motion for default judgment, the Court's Order entering it, and the notice of service of affidavits supporting the motion, may have never been served on AccuRadio in accordance with Rule 5 and Local Rule 5.2(a). The certificates of service never refer to actual service on the then pro se defendant via mail or otherwise. This potential failure to comply with Rule 5, coupled with the lack of actual notice occasioned by AccuRadio's own negligence, may have compelled the Court to set aside the default judgment under Rule 60(b)(1) or (b)(6). For the reasons set forth in greater detail in this Order, such a finding is now unnecessary.

term "executing a set of instructions which utilize the data packets in a predetermined order in accord with the rules" means "setting the order of the data packets by the software application on the user computer, based on the rules, and then utilizing the data packets with that order." [D.E. 170 at 17]. Zamora concedes in its Motion for Entry of Consent Judgment that, under this construction, "Defendants are not infringing any of the claims of the '339 patent" because "Defendants' accused systems do not set the order of the data packets by a software application on the user computer, but rather the Defendants' accused systems set the order of the data packets by a software application on the Defendants' servers." [D.E. 175 ¶ 2].

AccuRadio's service also does not set the order of data packets by a software application on the user's computer. [D.E. 202, Exhibit 1, ¶ 3]. Notably, Zamora filed no opposition to the supplemental memorandum and supporting affidavit to show otherwise. Hence, AccuRadio argues, it would be inequitable to allow the default judgment entered against AccuRadio to stand when Zamora has acknowledged that the interactive functions of AccuRadio's service does not infringe any of the claims of the '339 patent under the terms of the Claim Construction Order. This is particularly so when a default permanent injunction and monetary judgment of $106,000, with pre- and post-judgment interest accruing at the statutory rate, would work an extreme and unexpected hardship on AccuRadio's business.

We find this argument compelling. Under Rule 60(b)(5), a change in factual circumstances or the relevant governing law can justify relief from judgment, especially at it relates to prospective injunctive relief. Here, AccuRadio is subject to a permanent injunction in the default judgment. The continuing validity of that

injunction is in grave question given the Court's construction of the patent. And, on the other hand, if the injunction is deemed to be meaningless now that the patent at issue may not be infringed by AccuRadio's internet music service, in the interests of justice it should be discharged.

Either way one cuts it, the fact that Zamora now concedes that internet services like AccuRadio's may not infringe the patent in suit constitutes a material change in the record that warrants reconsideration of this judgment. As the Supreme Court has recognized, changed circumstances for purposes of Rule 60(b)(5) may come in many different forms. One of those is a "significant change" in the "factual conditions" that govern the case. *Agostini,* 521 U.S. at 215 (quoting *Rufo,* 502 U.S. at 384). Zamora's concession that the patent in suit may not be infringed, following this Court's Construction Order, seems to us to constitute a significant change in the conditions that govern this case. Equity requires that such a change in factual conditions be recognized by the Court.

Zamora will not be prejudiced by this Order. Ultimately, this central legal issue – the construction of the patent in suit and its application to all the defendants' operations – remains in play. A successful appeal by Zamora on this question will allow it to pursue damage claims against all the defendants, including AccuRadio. But given the state of the case today, where Zamora's monetary claims against AccuRadio and every other similarly situated defendant appear to have dissolved, a continuing judgment against AccuRadio no longer promotes the interests of justice. And when you

couple that reality with the existing substantial jurisdictional question as against AccuRadio, the grounds for granting the pending motion are palpable and compelling.

### III.  CONCLUSION

For the foregoing reasons, the Court will exercise its considerable discretion and set aside the Court's earlier default judgment [D.E. 128] against AccuRadio. AccuRadio's Motion to Set Aside Default Judgment [D.E. 155] is hereby **GRANTED**. AccuRadio shall file its answer to the pending complaint within twenty days, *together with* any notices of joinder with pending motions in the case, or separately any other independent motions it seeks to pursue given at this time.

**DONE AND ORDERED** in Chambers at Miami, Florida this 30th day of September, 2010.

EDWIN G. TORRES
United States Magistrate Judge